IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

ROBERT TURNER, on behalf of himself )
and others similarly situated, )
)
    Plaintiff, ) NO. 3:18-cv-00294
) JUDGE RICHARDSON
v. )
)
UTILIQUEST, LLC, )
)
    Defendant. )

## MEMORANDUM OPNION

Pending before the Court is Plaintiff's[1] Motion for Conditional Certification as a Collective Action and Approval of 29 U.S.C. § 216(b) Notice (Doc. No. 35) ("Certification Motion"). Defendant has filed a Response (Doc. No. 45), and Plaintiff has filed a Reply (Doc. No. 49).

Also pending before the Court is Plaintiff's Motion to Strike Portions of Declarations Submitted by Defendant (Doc. No. 50, to which Defendant has filed a Response (Doc. No. 52).

## BACKGROUND[2]

Plaintiff Turner is a former employee of Defendant Utiliquest, LLC. Utiliquest provides underground facility-locating services to utility companies, helping utility companies to conduct safer excavation, reduce damage to their buried facilities, and lower their total cost of ownership. Plaintiff filed this action pursuant to the Fair Labor Standards Act ("FLSA"), on behalf of himself and all similarly situated current and former employees who were either non-exempt, hourly

---

[1] Plaintiff Turner has filed a consent form indicating consent from Abdul Dohuky to become a party plaintiff in this action. Doc. No. 34.

[2] Unless noted otherwise, these facts are taken from the Complaint (Doc. No. 1) and assumed as true for purposes of the Certification Motion.

"Locators," [3] who worked for Defendant at any time since March 20, 2015 ("the Nationwide Locator Class"), and employees who worked for Defendant as "Supervisors," in the states of Tennessee or Georgia since March 20, 2015 ("the Supervisors Class").

The Complaint alleges that Plaintiff and similarly situated "Locators" worked off the clock and were denied compensation for some hours worked, including overtime pay at time-and-one-half their regular rates of pay for all hours worked in excess of forty hours per week.[4] In the pending motion, Plaintiff seeks to conditionally certify a class of only the first category of employees identified in his Complaint, the "Locators." He asks the Court to conditionally certify a class defined as "[a]ll current and former individuals who, at any time since March 20, 2015, are or were employed or hired as, or held the position of 'Locator' at Utiliquest, LLC at any of its locations nationwide." He also asks the Court to approve his proposed Notice to the class, to order Defendant to provide contact information for members of the class, and to toll the statute of limitations for all putative class members.

## **PERSONAL JURISDICTION**

Defendant asserts that this Court has no personal jurisdiction over non-Tennessee potential plaintiffs and, therefore, Plaintiff's request for a nationwide class must fail. Jurisdiction being a threshold question, the Court will address this argument first.

---

[3] Plaintiff's Motion for Conditional Certification defines "Locator" as any person who worked at Utiliquest whose primary job duties are and/or were to mark and "status" utility lines. The definition excludes managerial or executive employees (Doc. No. 35 at n.1).

[4] Plaintiff contends that when (during part of his employment with Defendant) he was a "Supervisor," he and similarly situated Supervisors were classified as "exempt," even though they did not meet the legal criteria to be exempt employees under the FLSA. He asserts that Defendant, therefore, was legally required to pay Plaintiff and other Supervisors for all hours worked, including overtime pay at time-and-one-half their regular rates of pay for all hours worked in excess of forty hours per week. Plaintiff does not seek to certify a class with respect to this claim.

Defendant does not dispute that this Court has specific (personal) jurisdiction over it for purposes of the FLSA claims of Tennessee Plaintiffs. It argues, however, that specific jurisdiction does not extend to non-Tennessee residents. Specific jurisdiction refers to jurisdiction over claims arising from or related to a defendant's contacts with the forum state. *Intera Corp. v. Henderson,* 428 F.3d 605, 615 (6th Cir. 2005); *Maclin v. Reliable Reports of Texas, Inc.*, 314 F. Supp. 3d 845, 849 (S. D. Ohio 2018). Although Defendant does not dispute that the claims of Tennessee residents arose from or are related to its contacts with Tennessee (operations of its business here), it argues that the claims of any individuals outside Tennessee arose beyond the specific jurisdiction of this Court.

Defendant cites to *Bristol-Myers Squibb Co. v. Superior Court of Cal., San Francisco Cty.*, 137 S. Ct. 1773 (2017), which was a consolidated products liability action brought by individual plaintiffs (not a class action or FLSA collective action), filed in California state court. In that case, the Court found that the California state court lacked personal jurisdiction over the Defendant with respect to claims that arose outside California. The Court explained that there must be an affiliation between the forum and the underlying controversy, such as an activity or an occurrence that takes place in the forum state. *Id.* at 1780, *cited in Hospital Auth. of Metro. Gov't of Nashville v. Momenta Pharmaceuticals, Inc.*, 252 F. Supp. 3d 678, 690 (M.D. Tenn. 2018). "[A] defendant's relationship with a . . . third party, standing alone, is an insufficient basis for jurisdiction." *Bristol-Myers*, 137 S. Ct. at 1781. And, when there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State. *Id*. The *Bristol-Myers* Court held that the mere fact that California plaintiffs had connections with the state (and allegedly sustained the same injuries as the non-California plaintiffs) did not allow the California court to assert personal jurisdiction over Defendant for purposes of claims that arose outside California. *Id*.

3

at 1781. "What is needed—and what is missing here—is a connection between the forum and the specific claims at issue." *Id.*

*Bristol-Myers* specifically left open the question of whether the same restrictions should be imposed on the exercise of personal jurisdiction by a *federal* court. *Bristol-Myers*, 137 S. Ct. at 1784. In addition, as noted by Justice Sotomayor in dissent: "The Court today does not confront the question whether its opinion here would also apply to a class action in which a plaintiff injured in the forum State seeks to represent a nationwide class of plaintiffs, not all of whom were injured there." *Id*. at 1789, n. 4.

Most district court cases since *Bristol-Myers* have held that that case does *not* apply in the federal class action context. *See, e.g., Swinter Group, Inc. v. Service of Process Agents, Inc.,* No. 4:17-CV-2759, 2019 WL 266299, at * 2-3 (E.D. Mo. Jan. 18, 2019) (*Bristol-Myers* does not apply to class actions); *Leppert v. Champion Petfoods USA, Inc.*, No. 18 C 4347, 2019 WL 216616, at * 4 (N.D. Ill. Jan. 16, 2019) (same); and *Hospital Auth.*, 353 F. Supp. 3d at 692 (same). Although the district courts have been divided on whether *Bristol-Meyers* applies, *see Molock v. Whole Foods Mkt., Inc.,* 317 F. Supp. 3d 1, 5 (D. D.C. 2018), the cases have "universally held" that in a putative class action (1) courts are concerned only with the jurisdictional obligations of the named plaintiffs and (2) unnamed class members[5] are irrelevant to the question of specific jurisdiction. *Hospital Auth.*, 353 F. Supp. 3d at 691; *Bank v. CreditGuard of Am.,* 18-CV-1311, 2019 WL 1316966, at * 12, n. 11 (E.D. N.Y. Mar. 22, 2019). Plaintiff argues that because this Court

---

[5] Indeed, unnamed class members—in a Rule 23 class action and, the Court has no trouble concluding by analogy, in an FLSA collective action—are not even plaintiffs in the case. *See Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 593 (2013) ("""[A] nonnamed class member is [not] a party to the class-action litigation *before the class is certified*.""" (quoting *Smith v. Bayer Corp.*, 564 U.S. 299, 313 (2011) (quoting *Devlin v. Scardelletti*, 536 U.S. 1, 16, n. 1, 122 S. Ct. 2005, 153 L.Ed.2d 27 (2002) (Scalia, J., dissenting)))).

4

concluded, in *Hospital Authority*, that *Bristol-Myers* did not extend to class actions, the Court should not extend *Bristol-Meyers* to this collective action. But FLSA collective actions are not the same as class actions, and the Court must keep this in mind.

Courts are also divided as to whether *Bristol-Meyers* applies to putative FLSA collective actions. For example, in *Maclin*, 314 F. Supp. 3d at 850, the court held that *Bristol-Meyers* applied to FLSA cases in that it divested the court of specific jurisdiction over the FLSA claims of non-Ohio plaintiffs against the defendant. The *Maclin* court determined that it would not limit the holding in *Bristol-Meyers* to mass tort claims or state courts. *Id*. at 851. Similarly, in *Roy v. FedEx Ground Package Sys., Inc.*, 353 F. Supp. 3d 43 (D. Mass. 2018), the court, distinguishing between class actions and FLSA actions, held that the opt-in plaintiffs in an FLSA collective action are more analogous to the individual plaintiffs who were joined as parties in *Bristol-Meyers* than to members of a Rule 23 certified class. *Id*. at 59-60. The plaintiffs in *Roy* could not demonstrate a nexus between FedEx's activities in Massachusetts and payment of drivers outside Massachusetts, so they could not establish personal jurisdiction over the non-Massachusetts plaintiffs. *Id*. at 61.

On the other hand, the district court in Montana differentiated FLSA claims from the state-law claims in *Bristol-Meyers*, finding that FLSA claims arise from a federal statute designed to address employment practices nationwide, a statute that does not limit claims to interstate plaintiffs. *Seiffert v. Qwest Corp.*, CV-18-70, 2018 WL 6590836, at * 2 (D. Mont. Dec. 14, 2018). Citing to *Swamy v. Title Source, Inc.*, 2017 WL 5196780 (N.D. Cal. Nov. 10, 2017), the court held that the Supreme Court in *Bristol-Meyers* did not intend to restrict a federal district court's personal jurisdiction in FLSA collective actions authorized by Congress. *Seiffert*, 2018 WL 6590836, at * 3. Thus, the court held that *Bristol-Meyers* did not apply to the plaintiff's "similarly situated" class

5

under the FLSA, regardless of where the opt-in plaintiffs may have suffered the alleged injury. *Id*. "Nothing in the plain language of the FLSA limits its application to in-state plaintiffs' claims." *Id*.

This Court is not persuaded by *Seiffert* or bound by its holding. The Court agrees with the rationale of the *Maclin* and *Roy* courts and finds that the "opt-in" plaintiffs in this FLSA case are more like the individual plaintiffs in *Bristol-Meyers* and *Bristol-Meyers* should apply. Accordingly, the Court has no personal jurisdiction over non-Tennessee plaintiffs. Plaintiff's request to conditionally certify a nationwide class will be denied. The Court now turns to whether a class of Tennessee plaintiffs should be conditionally certified for purposes of this action.

## **CONDITIONAL CERTIFICATION STANDARD**

The FLSA provides that a collective action to recover compensation may be maintained against any employer by any one or more employees for and on behalf of themselves and other employees similarly situated. 29 U.S.C. § 216(b). Unlike class actions under Fed. R. Civ. P. 23, FLSA collective actions require similarly situated employees to "opt in" as party plaintiffs. Also, because the FLSA requires only that the employees be "similarly situated," plaintiffs seeking to certify a collective action under the FLSA face a lower burden than those seeking to certify a class under Fed. R. Civ. P. 23. *O'Brien v. Ed Donnelly Enters.*, 575 F.3d 567, 584 (6th Cir. 2009), *abrogated on unrelated grounds by Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016)).

Generally, courts recognize a two-step process to determine whether plaintiffs are similarly situated. *Bradford v. Logan's Roadhouse, Inc.*, 137 F. Supp. 3d 1064, 1071 (M. D. Tenn. 2015). The first step takes place at the beginning of discovery, where the plaintiff bears the burden of showing that employees in the purported class are similarly situated. *Id*.[6] The plaintiff must show

---

[6] The second stage takes place after all of the opt-in forms have been received and discovery has concluded. *Brasfield v. Source Broadband Servs., LLC,* 257 F.R.D. 641, 642 (W.D. Tenn. 2009). At the second step, after discovery, the defendant may move to decertify the conditional class.

6

only that his position is similar, not that it is identical, to the positions held by the putative class members. *Id.* (citing *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006)). At this first stage, courts use a "fairly lenient standard" that typically results in conditional certification of a representative class.[7] *Id.* Although a court may consider the factual record developed to date when determining whether Plaintiff has met his evidentiary burden, a court does not resolve factual disputes, decide substantive issues going to the merits, or make credibility determinations at this first stage. *Id.* at 1072. If a court determines that conditional certification is warranted, it may authorize the notification of similarly situated employees to allow them to opt into the lawsuit. *Id.* This certification is conditional and by no means final. *Id.*

Where parties have been permitted to conduct some limited discovery to determine whether a class of similarly situated plaintiffs may exist, courts have had a difficult time elucidating an intermediate, or hybrid, standard that falls between the lenient first-stage and the strict second-stage review. *Creely v. HCR ManorCare, Inc.*, 789 F. Supp. 2d 819, 823 (N.D. Ohio 2011).[8] Here, the parties have conducted some discovery, although they disagree as to the extent of that discovery. *Compare* Doc. No. 45 at 9 *with* Doc. No. 49 at 9. *Creely* proposed a "modest plus"

---

*Bradford*, 137 F. Supp. 3d at 1072. At this second stage, the court has access to more information and employs a "stricter standard" in deciding whether class members are, in fact, similarly situated. *Comer*, 454 F.3d 547.

[7] The burden of proof is relatively slight at this stage of the case because the court is not making a substantive determination on the basis of all the evidence but is simply adopting a procedure which permits notice to be given to other potential class members. *Frye v. Baptist Memorial Hospital*, No. 07-2708, 2008 WL 6653632, at * 4 (W.D. Tenn. Sept. 16, 2008).

[8] The uncertainty of this standard was described in *Potts v. Nashville Limo & Transport, LLC*, No. 3-14-cv-1412, 2015 WL 4198793, at * 5 (M.D. Tenn. July 10, 2015), in this way: "In these and other cases, district courts have tied themselves in knots as to whether an intermediate standard is appropriate and, if so, what that standard might be."

7

standard for evaluating the propriety of conditional certification where some discovery has occurred. *Creely*, 789 F. Supp. 2d at 826-27.

The *Creely* court recounted four observations that have been made by courts struggling with this standard: (1) courts generally agree that allowing the parties to conduct some targeted discovery regarding the conditional certification question takes the question beyond the stage-one evidentiary boundaries of the complaint's allegations and supporting affidavits; (2) once beyond the stage-one evidentiary boundaries, the courts should consider the evidence produced by the plaintiff and the defendant with the explicit acknowledgment that the body of evidence is necessarily incomplete; (3) when reviewing the assembled evidence, the court's analysis is confined to evaluating whether the proposed class is "similarly situated" and does not touch upon the merits of plaintiffs' claims; and (4) litigation and judicial efficiency concerns would point toward the court considering, but not requiring plaintiffs to show, the factors commonly considered under stage two[9] in performing a "similarly situated" analysis, resolving any gaps or doubts in the evidence in favor of plaintiffs based upon the incomplete, although potentially substantial, factual record in light of the equitable goals and policies embodied in the FLSA. *Creely,* 789 F. Supp. 2d at 826.

Using these general propositions, the court in *Creely* held that a "hybrid" standard should apply, considering the evidence submitted by both parties, and required the plaintiff to make a "modest plus" factual showing that there is a group of potentially similarly situated plaintiffs that may be discovered by sending opt-in notices. *Id*. The court stated that it would review "whether

---

[9] *Creely* identified three factors considered in a second-stage analysis: (1) the disparate factual and employment settings of the individual opt-in plaintiffs; (2) the various defenses available to defendants with respect to the individual plaintiffs; and (3) fairness and procedural considerations. *Creely*, 789 F. Supp. 2d at 823.

8

Plaintiffs have advanced the ball down the field—showing that it is more likely that a group of similarly situated individuals may be uncovered by soliciting opt-in plaintiffs. *Id.* at 827. In *Potts v. Nashville Limo & Transport, LLC*, No. 3-14-cv-1412, 2015 WL 4198793, (M.D. Tenn. July 10, 2015), the court stated: "It seems sensible for a court at least to consider additional information following limited discovery, and courts can evaluate the weight to assign to that information on a case-by-case basis." *Id.* at * 5.

Here, the Court will apply the *Creely* "modest plus" hybrid standard, requiring that Plaintiff "advance the ball down the field"[10] and show a group of potentially similarly situated plaintiffs that may be discovered by sending opt-in notices. The Court will, as suggested in *Potts,* consider the additional information presented by both Plaintiff and Defendant and determine the weight to assign to that information based on the facts and circumstances of this particular case, including Plaintiff's claim that discovery in this case has been "extremely limited."

## **FACTUAL DISPUTES**

Plaintiff contends that he and the putative opt-in plaintiffs were all subject to Defendant's common policies and practices requiring Locators to work off the clock in violation of the FLSA's minimum wage and/or overtime provisions. In response, Defendant argues basically that the facts alleged by Plaintiff are false. Defendant cites to its Company Time Reporting Policy and Procedures (Doc. No. 45-4), in which non-exempt employees are instructed to report all hours worked in the pay period and told that no supervisor has the authority to ask employees not to report or to delay reporting work hours (Doc. No. 45-4 at 2 – UTQ-0000677). This Policy also

---

[10] The Court is aware of the drawbacks to adjudicating by metaphor. Here, however, the Court repeats *Creely*'s metaphor merely to convey a straightforward concept, *i.e.,* that Plaintiff must show some progress toward meeting his stage-two burden.

9

states that non-exempt employees are expressly *prohibited*[11] from performing any off-the-clock work (Doc. No. 45-4 at 7 – UTQ-0000682) and explains the three-level reporting hierarchy and procedures with which an employee should report any time-reporting errors. *Id.*

Defendant asserts that Plaintiff's bid for a collective action fails because his claim is based not on any policies of Defendant's, but rather on his regional manager's alleged *deviation* from Defendant's FLSA-compliant policies.[12] Moreover, Defendant contends that Plaintiff's conclusory allegations are directly contradicted by every active Locator working for Defendant in the State of Tennessee. Defendant has filed Declarations allegedly from every Tennessee Locator, and all of them have stated that Plaintiff's description of Defendant's operations is simply wrong. Many of these Declarants disclaimed any interest in joining a collective action. Thus, Defendant argues, there is no justification for conditional certification in this case.

The Court will not consider Defendant's Declarations, however, because it cannot resolve the factual disputes that those Declarations reflect. The balancing of competing affidavits would require credibility determinations, which are inappropriate at this stage of the litigation. The Court cannot decide substantive issues going to the ultimate merits or make credibility determinations

---

[11] Plaintiff argues that Defendant's written policy denies compensation to employees for the period in which they are commuting to their first job site and from their last job site each day. Doc. No. 49 at 2. He fails to note that, under Defendant's written policy, employees are also *prohibited from working* during their commute.

[12] Plaintiff's case is premised on the alleged "disconnect" between Defendant's written policies and what happens in practice. For example, Defendant has shown that its employees are, by written policy, specifically prohibited from performing any work-related activity during their commute to and from work. Plaintiff does not dispute that this written policy exists. Rather, he argues that, *contrary* to this written policy, Locators are required to load their company-owned vehicles each day and then unload them at the end of the day, which is compensable work and occurs before and after the employees' commute. There is a genuine factual dispute, which the Court cannot resolve on this motion, as to whether Plaintiff is required to perform this alleged "work" off the clock

10

now. *Crosby*, 348 F. Supp. 3d at 747. "Happy camper" declarations, such as those filed by Defendant (so-called because they tend to be from present or former employees handpicked[13] by a defendant/employer), are routinely given little or no weight at the conditional certification stage. *Id.* at 749 (collecting cases); *Stephens v. Sopapillas, LLC*, No. 3:18-cv-00296, 2019 WL 1460878, at * 4, n. 4 (M.D. Tenn. Apr. 2, 2019); *McClain v. First Acceptance Corp.*, No. 3:17-cv-00408, 2017 WL 3268026, at * 4 (M.D. Tenn. Aug. 1, 2017). Accordingly, Plaintiff's Motion to Strike (Doc. No. 50) will be denied as moot.

Clearly there are disputed issues of fact surrounding the merits of Plaintiff's claim based on alleged violations of the FLSA. For now, however, the sole question is whether Plaintiff has carried his burden to show that he and the members of the purported class are similarly situated, and a court should not weigh the merits of the underlying claims in determining whether potential opt-in plaintiffs may be similarly situated. *Crosby*, 348 F. Supp. 3d at 748-49.

## **SIMILARLY SITUATED EMPLOYEES**

The FLSA does not define the term "similarly situated," but courts have held that plaintiffs are similarly situated when they suffer from a single, FLSA-violating policy and when proof of that policy or of conduct in conformity with that policy establishes a violation as to all plaintiffs. *Bradford*, 137 F. Supp. 3d at 1071; *Watson v. Advanced Distrib. Servs., LLC*, 298 F.R.D. 558, 561 (M.D. Tenn. 2014). Employees may be similarly situated if their claims are unified by common theories of defendant's statutory violations, even if the evidence of these theories are

---

[13] The "cherry-picking" here apparently is not as egregious as it is in some cases. Defendant claims it has filed declarations from every active Locator, as opposed to just selected active Locators, in the State of Tennessee. But this is a factual claim the Court cannot credit (or discredit) at this juncture. Moreover, Defendant does not claim to include declarations of former employees.

11

individualized and distinct. *Id.* Indeed, "[s]howing a 'unified policy' of violations is not required." *O'Brien*, 575 F.3d at 584.

## ANALYSIS

As explained above, Plaintiff alleges that he was required by his manager, Gary Ligon, to work "off the clock." Defendant has shown that the alleged actions of Ligon were deviations from Utiliquest's written policies. *See* Declaration of Neil Vocke (Doc. No. 45-1). Plaintiff does not dispute this assertion. Doc. No. 45-24 at 7-9 (Plaintiff's Dep. at 45-47) ("There was a company document, piece of paper, company paper that said one thing, but the actual policy was by what Gary Ligon said."). Thus, in order to determine whether this case is suited for conditional certification, the Court must review the evidence to determine whether there is a factual basis for Plaintiff's claim that Defendant's common or uniform practice was to not follow its formal, written policy. *See Pacheo v. Boar's Head Provisions Co., Inc.*, 671 F. Supp. 2d 957, 962 (W.D. Mich. 2009).

In support of the pending motion, Plaintiff has filed his own affidavit and the affidavit of potential plaintiff Dohuky (Doc. Nos. 35-1 and 35-2). Plaintiff and Dohuky assert that *they* were required to work "off the clock." They also *allege* that "other Locators" were similarly required to work off the clock, but they cite no specific employee or instance in which such action was required. Moreover, Plaintiff has not identified any directive from Defendant for Ligon to violate its written policies or identified any employees, other than he and Dohuky, who were alleged victims of such a directive. Plaintiff has not shown that other Locators complained to management about Ligon's alleged practice. The Court cannot rest its decision on Plaintiff's conclusory allegations alone. The affidavits of Plaintiff and Dohuky do not establish that all Locators (indeed,

12

any other Locator) working under Ligon in Tennessee were subjected to the same timekeeping and pay practices that allegedly violate the FLSA.

Plaintiff has not shown that the other putative class members were subject to Ligon's alleged individual practice of violating Defendant's written policies. The Court understands it must not make factual determinations at this stage of the process, but Plaintiff must provide a "modest plus" factual showing of a common, single, illegal policy to violate Defendant's written timekeeping and pay policies, a policy that affects all of the Locators he purports to join in this action. He has failed to do so. In short, unlike Defendant, the Court does not say that Plaintiff and Dohuky are *wrong*; it says merely that they are *alone* in their contentions. Thus, their contentions fail to adequately support certification of a collective action.

## CONCLUSION

The question of whether Plaintiff and Dohuky were required by Ligon to work off the clock is a question for another day, but the Court finds that Plaintiff has failed to carry his burden to show that he is similarly situated to other potential plaintiffs who have suffered from a single, FLSA-violating policy, proof of which would prove a violation as to all plaintiffs. Accordingly, Plaintiff's Motion for Conditional Certification (Doc. No. 35) will be denied.

An appropriate Order will be entered.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE